**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| Gemini Electronics, Inc., | ) | |
| | ) | |
| Plaintiff. | ) | |
| | ) | |
| v | ) | Case No. 04-166C |
| | ) | Judge Marian Blank Horn |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF S'RESPONSE TO RULE TO SHOW CAUSE ORDER**

PURSUANT to an order of this court filed June 30, 2004, counsel for Plaintiff Gemini Electronics, Inc., files this response to the court s'Rule to Show Cause. Counsel has read the court s' order of June 30, 2004. In that order, the court states that counsel has failed to cooperate with the attorney for the United States Department of Justice during the course of this litigation. This is simply not true.

1. Since March, 2004 Attorney Lewis Myers, Jr. has engaged in numerous conversations with Carolyn Craig. Ironically, there has not been a conversation between Ms. Craig and Plaintiff counsel where there has been any substantial disagreement about any of the issues in this case.

2. On or about March 31, 2004, Ms. Craig filed a Motion to Compel Discovery. Prior to the motion being filed, Mr. Myers had been in contact with Ms. Craig regarding the outstanding discovery. On at least two occasions, plaintiff counsel had informed Ms. Craig that his client, Willie Wilson, CEO of Gemini Electronics was out of the country. During the second week of March, 2004 Mr. Wilson traveled to China on a business related venture with one of his companies. Accordingly, some of the information requested in the interrogatories required a specific answer from him. Ms.

Craig was informed that Mr. Wilson was unavailable and that the delay with the interrogatories was related thereto. However, in the conversations preceding the filing of the Motion to Compel, there was no disagreement, failure to cooperate, refusal to respond to the document and interrogatory request or any other contentious correspondence or conversation between Ms. Craig and plaintiff counsel.

3. When the Motion to Compel was filed, plaintiff counsel was shocked in light of the fact that Ms. Craig had not expressed to him any concerns regarding lack of cooperation on the part of plaintiff counsel.

4. Moreover, there was never any conversation between Ms. Craig and plaintiff counsel wherein Mr. Myers refused to cooperate via the discovery process.

5. As a result of the Motion to Compel, plaintiff counsel did have a telephone conference with the court and Ms. Craig. At the time of the telephone conference, plaintiff counsel attempted to explain to the court that he was surprised at the filing of the Motion to Compel because there had not been a lack of cooperation on his part. Plaintiff counsel stated that the matter could have been resolved between counsel. Specifically, the Federal Local Rules and Rules of Court require counsel to try and resolve any outstanding discovery matters without the involvement of the court. At the very minimal, if counsel had a problem with opposing counsel being uncooperative, an attempt should have been made to resolve the problem in an amicable and professional manner. There is no correspondence from Carolyn Craig to plaintiff counsel preceding the filing of the Motion to Compel when Ms. Craig stated that she felt that counsel was being uncooperative and unresponsive to the

dictates on the orders of this court. In fact, there is not one conversation prior to the filing of the Motion to Compel wherein Ms. Craig expressed any dissatisfaction with the lack of cooperation of plaintiff s'counsel. Indeed, but ironic, the preceding conversations before the filing of the Motion to Compel with counsel for the Government were cooperative and cordial.

6. The following telephone conference concerning the Motion to Compel, and after the return of Mr. Wilson from China, counsel filed the plaintiff s'answers to the interrogatories and complied with the defendant s'request for the production of documents. As to this day, there has been no objections to these filings.

7. In April, 2004, counsel arranged the deposition of Mr. Rufus Porter at plaintiff counsel s'law office in Chicago, Illinois. Prior to the deposition hearing, counsel had several conversations with Ms. Craig regarding the deposition. More importantly, counsel worked with Ms. Craig and the attorney for Mr. Rufus Porter to coordinate scheduling, time of deposition and place. Perhaps, it should be noted that the discovery deposition in this matter were delayed because of Ms. Craig s'schedule. Ms. Craig had informed the court as well as counsel that she could not be available for some weeks at a time to take depositions because she was the duty attorney with the Justice Department and could not schedule matters during this period. More specifically, plaintiff counsel made an effort to accommodate Ms. Craig s'schedule which involved scheduling dates to accommodate her.

8. Following the deposition of Mr. Rufus Porter at the law office of Lewis Myers, Jr. in April, 2004, Ms. Craig informed counsel that she would like to take the deposition of

Mr. Willie Wilson. Pursuant to this request, on May 25. 2004, counsel produced Mr. Willie Wilson for the taking of his deposition at the United States Attorneys office in Chicago, Illinois.

9. As of May 25, 2004, plaintiff counsel Lewis Myers, Jr. and Attorney Carolyn Craig have not engaged in any contentious, disagreeable, uncooperative behavior in regards to **any** matters related to the outstanding orders of this court or related to issues in this litigation. Moreover, on May 21, 2004, Attorney Lewis Myers, Jr. wrote a letter to Attorney Carolyn Craig concerning outstanding discovery in the case. (See Attachment A, correspondence from Myers to Craig, May 21, 2004). In the May 21, 2004 correspondence Attorney Myers stated that he had received some information e-mails of certain postal employees that might be relevant to his case. Specifically, Attorney Myers mentioned the names Gerald Lucas, Leonard Eickhoff, Susan Angelo and George S. Kikuchi. These individuals did have relevant information concerning the Gemini contract in dispute in this litigation. Although these e-mails should have been turned over prior to May 21, 2004 per the order of this court, Attorney Lewis Myers, Jr. nevertheless sought to resolve any problem in this regard by way of correspondence and communication. Specifically, in telephone conversations and correspondence, Attorney Myers requested that counsel for the Government make a diligent attempt to locate and identify where the named employees in the May 21, 2004 letter currently resided and/or worked. Specifically, three of the individuals are listed on the plaintiff s witness list. Ms. Craig subsequently forwarded to counsel e-mails of Lucas, Eickhoff, Angelo and Kikuchi. However, Attorney Myers received

these e-mails after the deposition of his client Willie Wilson. As of today, Attorney Myers has received no information from Ms. Craig concerning the whereabouts of the individuals referenced in the letter. Accordingly, perhaps a motion to compel discovery would be in order. However, in keeping with the rules of practice of the local Federal District Court for the Northern District of Illinois and other federal district courts, counsel has decided to make every attempt to resolve this discovery problem in a manner short of a motion to compel. Obviously, counsel for plaintiff could have telephoned the chambers of the court and alleged that Ms. Craig has been uncooperative and unresponsive to counsel s' request for discovery. Particularly, in light of the fact that the trial date is fast approaching. Following the May 21, 2004 correspondence between Mr. Myers and Ms. Craig and after the deposition of Mr. Willie Wilson on May 25, 2004, Mr. Myers and Ms. Craig maintained communications concerning the preparation of the Joint Status Report that was due June 15, 2004. Between May 25, 2004 and June 15, 2004 there was not one conversation between Ms. Craig and Mr. Myers concerning an issue of dispute or contentiousness in this case wherein Attorney Myers was uncooperative with counsel for the government. From April through June, 2004, there is not one letter, e-mail or any other written correspondence from Ms. Craig to Mr. Myers indicating any concern about a lack of cooperation between Ms. Craig and Mr. Myers as it regards the instant litigation. There is not one letter, e-mail or written correspondence indicating that Mr. Myers had refused to cooperate with Ms. Craig concerning any order of this court.

10. As to the first week of June, 2004, Ms Craig was in contact with the law office of Lewis Myers, Jr. concerning the filing of a Joint Status Report which was due on June 15, 2004 in this court. Ms. Craig, in conjunction with Mr. Myers s'office, prepared the Joint Status Report which was filed on or about June 15, 2004 with the court. As of June 15, 2004, there have been no disagreement between Carolyn Craig, Lewis Myers, Jr. or anyone at the law office of Lewis Myers concerning any matters regarding the litigation before the court. There is not **any** correspondence from Ms. Craig to Lewis Myers, Jr. expressing any concern about a lack of cooperation on the part of Mr. Myers concerning matters pending before the court. There is no e-mail, written correspondence or any other printed documents that reflect a feeling on the part of Ms. Craig that counsel for the plaintiff had been uncooperative.

11. On June 16, 2004 Attorney Myers filed a witness list with this court. This list was subsequently stricken by order of June 25, 2004.

12. On or about June 21, 2004, Ms. Carolyn Craig was in contact with my office regarding the filing of exhibits to be used in the trial of this matter. (See attached affidavit of Rita Howard). By the way, this telephone contact between Ms. Craig and my office was three working days after the last contact with my office concerning this matter. As of June 21, 2004, there had been no allegations or correspondence by Ms. Craig indicating any lack of cooperation on any of the matters that Attorney Myers has referenced herein.

13. Ms. Howard states in her affidavit:

> **"On or about June 21, 2004, I was in contact with Carolyn J. Craig regarding the filing of the exhibits to be used in the trial of the above matter. Ms. Craig informed me that we could fax to her our initial list of exhibits and that we should get the actual documents to her by June 28, 2004 and her office would take care of filing the exhibits electronically... "**

14. More dispositively of the issue of the lack of cooperation in this litigation is a letter dated June 21, 2004 from Carolyn Craig to Lewis Myers, Jr. Because of the importance in this letter, counsel will cite it in its totality.

> **"Enclosed, please find a draft list of the exhibits the government intend to use at trial. Copies of these exhibits, other than the complaints, are being forwarded to you via federal express and should arrive on the morning of June 23, 2004. I am in receipt of a facsimile copy of Plaintiff's Initial Exhibits List. However, I will need to receive via Federal Express at the address indicated below, copies of all 55 of plaintiff's exhibits no later than June 23, 2004. Once we have exchanged our individual exhibits lists, and have made any objections to those exhibits, I will create a joint list of exhibits with objections, scan the actual exhibits and file the joint exhibits list with the court on or before July 2, 2004. In the event I do not receive plaintiff's exhibits in a timely manner, I will not assume the responsibility for filing the exhibits list. I can be contacted at the above number if you have any questions... "**

15. As of June 21, 2004, in a letter to me, Ms. Craig does not express any problems of a lack of cooperation, or any failure on the part of Lewis Myers, Jr. to obstruct the progress of this litigation. Apparently, if Attorney Myers had demonstrated a pattern

and practice of uncooperativeness it certainly would have been evident in this correspondence. Ms. Craig, in a telephone conversation with Rita Howard, subsequent to receiving her fed-ex on June 23, 2004, was told that the plaintiff s' exhibits per her request would be forwarded to her on June 28, 2004. This was done.

16. During the week commencing June 21, 2004, Ms. Craig was in contact with my office over a three day period discussing the filing of the Joint Exhibits List. During the course of these discussions, there was no concern for a lack of cooperation or any refusal to comply this court s' orders or any other concern about this litigation. As Ms. Howard states in her affidavit, the conversations were professional and cordial.

17. During the week of June 21, 2004, counsel was out of the State of Illinois involved in a litigation matter pending in the District of Columbia. As of Friday, June 25, 2004, there were no outstanding issues between counsel for the government and counsel for the plaintiff regarding a lack of cooperation.

18. On June 28, 2004 and June 29, 2004 counsel was out of the State of Illinois. On June 28, 2004 and June 29, 2004 counsel was in Washington, DC. As stated in the affidavit of Rita Howard, and I quote in relevant part:

> **"Defendant counsel Carolyn Craig contacted our office and asked to speak with Attorney Myers. I informed Ms. Craig that Attorney Myers was currently out of town on another litigation matter and that he was unreachable at that moment. Ms. Craig then explained to me that, although it was never mentioned in the June 6, 2004 status conference, that Judge Marian Horn had issued an order on June 25, 2004 requiring that both counsels file a Joint Statement of Facts and Joint Submission of Issues by July 2, 2004, along with**

> **the finalization of the Joint Exhibits. Ms. Craig informed me that an extension of time would be required as it was too short notice to have the documents prepared by July 2, 2004. She wanted to discuss the matter to find out of Attorney Myers would agree. I informed Ms. Craig that Attorney Myers was out of town and would be until June 30, 2004 but that as soon as he contacted the office, I would relay the message to him. Ms. Craig informed me that she would seek the extension and inform the clerk that Attorney Myers was out of town and unavailable at the time of her call. I repeated to Ms. Craig that I would give Attorney Myers the information regarding the extension and that I was certain that Attorney Myers would have no problem with the request; and that she should go ahead and request the extension. Following this conversation, plaintiff s' exhibits was sent to Carolyn Craig via federal express. "**

19. Some time on the evening of June 28, 2004, I was informed by Ms. Howard of the above conversation. At that time, I informed Ms. Howard that I did not oppose a request by Ms. Craig for an extension of time. More specifically, I knew that I would be traveling on June 29, 2004 back to Chicago and would not reach my office before June 30, 2004.

20. In what appears to be an incredible display of bad faith and questionable ethics on the part of counsel for the government, after having the conversation as related by Rita Howard concerning a request for an extension that she wanted, this court was told by counsel that I had been "uncooperative" and had not been willing to cooperate with counsel in this case. In light of the recitation of the facts herein, this was totally untrue. As of June 28, 2004, Ms. Craig had been in contact with my office during the week of June 21, 2004 on more than three occasions. In fact, Ms. Craig was supposed

to relay to this court that I was out of town on another litigation matter and would not return to Chicago until June 30, 2004. Moreover, the request for an extension of time had been agreed to by me in light of the information that had been relayed to Ms. Howard by Ms. Craig. Counsel did not attempt to subvert, disrupt or undermine the process of this court.

21. As of June 28, 2004, Attorney Lewis Myers, Jr. has cooperated with counsel for the government in every regard.

22. On or about June 29, 2004, counsel has now been informed that a law clerk from her office has contacted Attorney Lewis Myers, Jr. and left a voice mail message requesting that Attorney Myers contact the court. As stated herein, on June 29, 2004 I was not in my office in Chicago. Moreover, on the afternoon and evening of June 29, 2004 I was in transit from Washington, DC to Chicago. Unfortunately, I did not receive a message that the court's clerk had telephoned my office on June 29, 2004.

23. Some time on June 30, 2004, the court issued an order, which is the subject of this Rule to Show Cause. Counsel returned to his law office on July 1, 2004. As of the morning of July 1, 2004, counsel was unaware of any message left by this court's chambers requesting that he contact the court.

24. On July 1, 2004, counsel was in contact with the chambers of this court concerning the matters discussed herein. More specifically, counsel was requested to contact Carolyn Craig in an attempt to arrange a telephone conference between counsel, Ms. Craig and the court's law clerk.

25. Counsel duly contacted the office of Ms. Craig. He was told that she was in court during the morning hours at the Federal Court of Claims. Some time during the afternoon, the conference call between Mr. Myers, the court's law clerk and Ms. Craig did occur. At that time, counsel was informed that the court had entered two orders in this matter concerning this case. Counsel duly read the orders and informed the court's law clerk that he would respond per the order on or before July 6, 2004.

26. By way of order, this court suggested that this matter might be considered for an involuntary dismissal per Rule 41. Rule 41 states in relevant part:

> **"For failure of the plaintiff to prosecute or to comply with these rules or any order of court, the court may dismiss on its own motion or defendant may move for dismissal of an action or any claim.** "

27. On two prior occasions, this court was informed that plaintiff counsel was uncooperative with the government. Understandably, if this allegation by counsel opposite was true then this court should have reason to be concerned. However, the misrepresentation and statements by counsel for the government that Lewis Myers, Jr. has been uncooperative is belied by the factual recitation in this response. From May 31, 2004 through today, this has been a period of more than 90 days wherein there has been full cooperation by Lewis Myers, Jr. with counsel for the government. Counsel for the government does not cite one instance since March, 2004 wherein she can state that counsel was uncooperative with her. Counsel has made every reasonable effort to accommodate Ms. Craig's schedule and the schedule of the defendants. As this court can determine from a month by month if not week by week

review of the contact with counsel for the government in this matter, there has been no breakdown in communication or cooperation.

28. On or about June 6, 2004, there was a scheduled telephone conference with the court and counsel for the government. This call was scheduled for 10:30 am. Unfortunately, counsel for the Plaintiff had put the time of 10:30 am in his palm pilot and/or date book. On or about June 6, 2004, counsel was not present at his office when the court telephoned for the conference. This was due to an error made by counsel as to the exact time of the call. For this error, counsel takes full responsibility. However, on June 6, 2004, shortly after counsel s office was contacted and informed that the teleconference was about to commence, counsel s secretary contacted counsel who was then in a courtroom in one of the circuit court s of Cook County. At that time, counsel suggested to his secretary that he could be made available via mobile phone to the conference call. In fact, counsel left the courtroom anticipating that he would be joined in to the conference call from the courthouse in Chicago. Counsel was informed by his secretary that the court had stated that the phone conference could proceed with Ms. Howard standing in. Ms. Howard took copious notes of the conversation and shared all relevant information as to the conference call with counsel. More importantly, there had been at least three prior occasions when status conferences or telephone conferences had been held in this litigation. On each of these occasions, counsel was present at the appointed time. More specifically, on two occasions, counsel was actually present before the court in Washington, DC for the status conference. Prior to June 6, 2004, there is no record

of counsel failing to be present and available for status conferences.

29. More importantly, counsel initially did not register under the electronic filing system in the Federal Court of Claims. Counsel was duly admonished by the court and given a specified period of time to comply with the requirements of the electronic filing. This court is aware that counsel adhered to the timetable set forth for counsel to qualify for the electronic filing. This order was duly complied with. Counsel has subsequently filed all relevant documents before this court through the electronic filing system.

30. Counsel has been notified by order striking the plaintiff's witness list that counsel's signature was not attached or signed to the witness list that was filed. Also the Court has stated that the length of time the testimony would take on direct examination was not included as well as the nature of what some of the testimony would be. Counsel is resubmitting a corrected list consistent with the order of the Court.

31. While counsel appreciates and respects the need for pleadings to conform to the rules, but for the allegation of "uncooperativeness" by counsel for the government, this matter could have been handle by a phone call. There is no plan or scheme by counsel to be anything other than courteous and respectful to this Court.

32. This court set a trial date in this matter more than a month ago. To date, there is no reason that the schedule set thus far will not facilitate the trial notwithstanding some of the problems encountered. This court has provided a time-table that counsel will comply with. In light of the contentiousness experienced in this case, counsel is more interested perhaps than the Court to bring this case to trial