**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GEMINI ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 04-166C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT STIPULATION OF FACTS AND ISSUES OF LAW**

Pursuant to the Court's orders of June 25, 2004 and July 7, 2004, the parties submit the following joint stipulation of facts, as follows:

**I. Joint Stipulation of Facts**

1. Plaintiff is Gemini Electronics, Inc. ("Gemini") and defendant is the United States ("the Government").

2. In 1999, the United States Postal Service ("Postal Service"), through Rufus Porter, solicited bids for telecommunications services from three providers. Included among the providers solicited were: Ameritech, a current Postal Service provider of telecommunications services, and Gemini.

3. At that time, the Postal Service was concerned with the provision of telecommunications services in its Chicago District.

4. Following submissions of bids and presentations, the Postal Service decided to enter into a public telecommunications service agreement with Gemini.

5. The Postal Service had entered into a similar agreement in 1992 with Illinois Bell (now, Ameritech) for the installation and maintenance of payphones in various Postal Service facilities. That agreement was to expire on September 30, 2000.

6. Attached to the 1992 agreement with Illinois Bell was an "Exhibit A – Rider – Illinois" which listed payphones in various Postal Service facilities throughout the State of Illinois, including the Northern Illinois and Central Illinois Districts.

7. Prior to executing any written agreement in this case, Gemini provided a draft copy of the public telecommunications service agreement to Maria Fuhrmann, an attorney with the Postal Service's Law Department in Chicago, for review and comments.

8. On October 13, 1999, Ms. Fuhrmann provided her written comments regarding Gemini's draft agreement to counsel for Gemini, Hank Kelly. Additional written comments were provided by Ms. Fuhrmann to Mr. Kelly on October 14, 1999.

9. Mr. Porter testified that the Postal Service provided him with the authority to enter into the public telecommunications service agreement with Gemini and that his authority was limited to the district in which he served as District Manager and Postmaster – the Chicago District.

10. Mr. Porter has also indicated, through his attorney, Arthur Sutton, that he was provided with oral authority to enter into the agreement with Gemini by J.T. Weeker (now deceased), former Vice President of the Postal Service's Great Lakes Area.[1] See Defendant's Status Report, dated May 7, 2004.

11. According to the Postal Service's Administrative Support Manual, Issue 13, dated July 1999, the District Manager's responsibilities are limited to a particular geographic area:

---

[1] At all relevant times, the Great Lakes Area of the Postal Service generally covered the states of Illinois, Michigan, Indiana, Wisconsin, and a small part of Missouri, including all of the applicable districts within each of those states.

> The district manager, through the information systems manager at the district, manages voice, video, facsimile, and data telecommunications systems within a geographic boundary including processing and distribution installations.

12. The United States Postal Service Management Instruction, dated May 31, 1995, also addresses the subject of "Acquiring Pay Telephones."

13. On or about October 21, 1999, Willie Wilson, on behalf of Gemini, and Rufus Porter, on behalf of the Postal Service's Chicago District, executed a public telecommunications service agreement ("the agreement"). The agreement was for a term of five years.

14. At the time the agreement was executed, Mr. Wilson was Chief Executive Officer for Gemini, and Mr. Porter was the District Manager and Postmaster for the Postal Service's Chicago District.

15. The agreement gave Gemini the right to install public telecommunications services equipment in certain Postal Service (USPS) facilities:

> USPS hereby grants to Gemini the right to use, occupy, and have access to the Premises . . . that will allow GEMINI the ability to install and maintain equipment for purposes of providing public telecommunications services. USPS grants GEMINI the authority to install and maintain public supporting structures, devices, appliances, electrical connections and other equipment necessary to allow GEMINI to provide telecommunications services to end users.

16. The agreement stated that Gemini and the Postal Service were to mutually agree upon the initial quantity of phones to be installed based upon a survey of existing phones and projected needs. Likewise, Gemini and the Postal Service were to agree jointly upon the initial locations of any equipment.

17. According to the agreement, Gemini would pay the Postal Service a monthly commission of 25 percent of the telecommunications revenue received by Gemini from the pay telephones.

18. At all relevant times, the terms and conditions of the agreement were reduced to writing and were part of the written agreement.

19. Specifically, paragraph 15 of the agreement, entitled "ENTIRE AGREEMENT," provides:

> This Agreement shall constitute the sole Agreement of the parties relating to the Premises. Neither party will be bound by statements, warrants, or promises, oral or written unless such statements, warrants or promises are set forth specifically in this Agreement.

20. Paragraph six of the agreement, entitled "PREMISES," refers to the following:

> The Premises are described as the following locations that are owned, managed, leased, or operated by USPS and that are subject to this agreement:
>
> See Attached Exhibit A

21. "Exhibit A," as referenced in paragraph six of the agreement, was to list the payphone numbers and locations of Postal Service facilities where Gemini was to install its telecommunications equipment.

22. The Government and Gemini disagree as to which document represents "Exhibit A," as referenced in paragraph six of the agreement.

23. In its complaint, filed in the United States Court of Federal Claims on February 6, 2004, Gemini attached (as Exhibit B) what it purports to be "Exhibit A" to the agreement. Gemini's Exhibit B is a list of payphone numbers and locations from within the Postal Service's

Chicago District, as well as some payphone numbers and locations from the Postal Service's O'Hare Airport facility (which was not within the Chicago District at that time). Gemini's Exhibit B is also accompanied by a cover letter, dated June 13, 2000, from Mary E. Giorgi, Account Manager for Ameritech to Phillis Flynn, Information Systems Department, United States Postal Service, Chicago District Office. The cover letter discusses the transition of pay phones in the Chicago District from Ameritech, the previous service provider, to Gemini.

24. Gemini's verified complaint for price discrimination, filed in the United States District Court for the Northern District of Illinois on March 26, 2002, involves the same parties and the same agreement as in this case. In paragraphs 12 and 13 of that complaint, Gemini specifically acknowledged that its agreement with the Postal Service, Gemini's services was to be limited to the Postal Service's Chicago District:

> On or about August 26, 1999, Gemini Electronics, Inc. entered into a bidding process for the contract for providing pay telephone management services for the United States Postal Service facilities within the Chicago District.
>
> That Gemini Electronics, Inc. was chosen as a provider for pay telephone management services at the United States Postal Service facilities in the Chicago District . . . .

25. Gemini's Willie Wilson testified in his deposition on May 25, 2004, that "Exhibit A" of the agreement is the same list as the list of payphones and locations attached to the 1992 agreement that the Postal Service had with Illinois Bell. This list is entitled "Exhibit A Rider – Illinois" and includes payphone numbers and locations both inside as well as outside the Postal Service's Chicago District.

26. Contrary to Mr. Wilson's assertion that "Exhibit A" to Gemini's agreement with the Postal Service is the same document as the "Exhibit A – Rider – Illinois" to the 1992 Illinois Bell agreement, Mr. Porter testified that the "Exhibit A – Rider – Illinois" was not what was referred to as "Exhibit A" in paragraph six of the agreement. Mr. Porter testified that "Exhibit A" to Gemini's agreement with the Postal Service was a variation of the "Exhibit A – Rider – Illinois" to the 1992 Illinois Bell agreement.

27. Mr. Porter further testified that "Exhibit A," as referenced in paragraph six of the agreement, referred to a compiled list of payphone numbers and locations from within the Postal Service's Chicago District. This list, as specifically identified by Mr. Porter as "Exhibit A" to the agreement, is attached to a cover letter, dated October 22, 1999, from Yasmin Clark, Information Systems Coordinator, United States Postal Service to Maria Fuhrmann, United States Postal Service, Law Department. This list is comprised of Ameritech payphone numbers and locations within the Chicago District and also includes some payphone numbers and locations from the Postal Service's O'Hare Airport facility, even though Mr. Porter acknowledges that the O'Hare Airport facility was not part of the Postal Service's Chicago District at that time.

28. In compiling the payphone numbers and locations to be included in "Exhibit A" to the agreement, Mr. Porter testified that Postal Service employees Vernon Sims and Phyllis Flynn utilized the "Exhibit A – Rider – Illinois," belonging to the 1992 Illinois Bell agreement with the Postal Service, and were to remove from the "Exhibit A – Rider – Illinois," all of the payphone numbers and locations outside the Postal Service's Chicago District.

29. Mr. Porter testified that he wanted to "make sure that the phones that were part of the agreement [with Gemini] were reflective of the Chicago District . . . [to] make sure

that all of the phones that were in the North and Central [Districts] were taken [off the list] . . . because [ ] [he] didn't have any authority over [the] North and Central [Districts]." However, a small number of locations and phone numbers from the Postal Service's O'Hare Airport facility were not removed from the list.

30. A Commission Statement for Gemini from May 2001 indicates that Gemini provided telecommunications services and was reimbursed by the Postal Service for a limited number of payphones at the Postal Service's O'Hare Airport facility.

31. Mr. Wilson testified that Gerald Kubick, plant manager of the Postal Service's O'Hare Airport Mail Center ("O'Hare AMC"), did not allow Gemini to install additional payphones at the O'Hare AMC.

32. Some time after the October 1999 agreement was signed, J.T. Weeker, Area Vice President for the Postal Service's Great Lakes Area, spoke with Mr. Porter about his desire to help Gemini expand their telecommunication services to areas beyond the Postal Service's Chicago District. Mr. Wilson maintains that J.T. Weeker orally agreed to allow Gemini to service areas beyond the Chicago District, including the Northern Illinois and Central Illinois Districts.

33. At Mr. Weeker's request, Mr. Porter spoke with other Postal Service district managers to see it they had any interest in having Gemini provide telecommunication services in their districts.

34. Mr. Porter testified that, in order for Gemini to expand its services beyond its agreement within the Chicago District, Gemini would have had to enter separate written agreements with the other districts. To Mr. Porter's knowledge, and as acknowledged by

Gemini's Willie Wilson, no such written agreements were ever executed.

35. On September 9, 2002, Jon Michelle Richardson, an attorney representing Gemini, wrote a letter to Vernon Sims, Manager of Information Systems at the Postal Service's Chicago District Office, notifying the Postal Service of Gemini's intent to terminate performance of the October 1999 agreement. The termination was to be effective October 11, 2002. Ms. Richardson's letter included the following explanation for Gemini's termination of the agreement:

> Due to the poor economic climate of the country and most notably in the telecommunications industry, Gemini Electronics, Inc. has experienced severe financial loss in servicing the subject Public Telecommunications Service Agreement dated October 18, 1999, entered into between Gemini Electronics, Inc. and the USPS . . . . Be hereby advised that Gemini Electronics, Inc., hereby tenders notice to the USPS of its intent to terminate performance under the aforementioned Agreement. (Exhibit 4, p. 1).

## II. <u>Joint Issues of Law</u>

1. Whether Rufus Porter, the District Manager and Postmaster for the Postal Service’s Chicago District, had authority to enter into a public telecommunications service agreement with Gemini that would include Postal Service facilities outside the Chicago District.

2. Whether the Postal Service breached the October 1999 agreement when it did not allow Gemini to install payphones in Postal Service facilities in the Northern Illinois or Central Illinois Districts.

3. Whether, in 2000, the Postal Service breached the October 1999 agreement when Gerald Kubick, plant manager at the Postal Service's O'Hare AMC, did not allow Gemini to install additional payphones at the O'Hare AMC.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Lewis Myers, Jr.
LEWIS MYERS, JR.
25 E. Washington Street, Suite 1225
Chicago, Illinois 60602
Tele: (312) 236-8004
Fax: (312) 236-8804
E-mail: lmyersatt@aol.com

Attorney for Plaintiff

Dated: July 15, 2004

s/ Carolyn J. Craig
CAROLYN J. CRAIG
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 305-7561
Fax: (202) 305-7644
E-mail: carolyn.craig@usdoj.gov

OF COUNSEL:

CHRISTOPHER J. BURTON
Commercial and Appellate Litigation
Trial Attorney
U.S. Postal Service
475 L'Enfant Plaza, S.W., Room 6323
Washington, D.C. 20260-1127

Attorneys for Defendant

Dated: July 15, 2004