**No. 04-166C**
**(Judge Horn)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

---

**GEMINI ELECTRONICS, INC.,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S REPLY TO PLAINTIFF'S POST-TRIAL BRIEF

---

**PETER D. KEISLER**
**Assistant Attorney General**

**DAVID M. COHEN**
**Director**

**MARK A. MELNICK**
**Assistant Director**

**OF COUNSEL:**

**CHRISTOPHER J. BURTON**
**United States Postal Service**
**Commercial and Appellate Litigation**
**475 L'Enfant Plaza, Room 6323**
**Washington, D.C. 20260-1127**
**Tel: (202) 268-3069**
**Fax: (202) 268-5287**
**E-mail: christopher.j.burton@usps.gov**

**CAROLYN J. CRAIG**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**1100 L Street, N.W.**
**Attn: Classification Unit, 8th floor**
**Washington, D.C. 20530**
**Tel: (202) 305-7561**
**Fax: (202) 305-7644**
**E-mail: carolyn.craig@usdoj.gov**

**November 24, 2004**

**Attorneys for Defendant**

# TABLE OF CONTENTS

Page

TABLES OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S REPLY TO PLAINTIFF'S POST-TRIAL BRIEF . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I. Gemini Was On Notice That The October 1999 Agreement Was Limited To The Chicago District . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Parol Evidence Rule May Be Used To Determine The Parties' Intent . . . . . . . . . . . . 3

A. Representations Of J.T. Weeker's Intentions Do Not Provide The Basis For An Enforceable Agreement Beyond The Chicago District . . . . . . . . . . 4

B. Gemini Had No Enforceable Agreement With The O'Hare Airport Mail Center . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

C. Gemini Had No Enforceable Agreement With The Central Illinois District . . . . . 8

III. Any Ambiguity In The October 1999 Agreement Should Be Resolved Against Gemini . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. Gemini Fails To Establish That Rufus Porter Had Express Authority To Enter Into An Agreement That Covered Facilities Beyond The Chicago District . . . . . . . . . . .10

V. Gemini Fails To Establish That Rufus Porter Had Implied Authority To Enter Into An Agreement That Covered Facilities Beyond The Chicago District . . . . . . . . . . 13

VI. Apparent Authority Is Insufficient To Bind The Government . . . . . . . . . . . . . . . . . . . . . 16

VII. Gemini Fails To Establish That An Authorized Agent Of The Postal Service Ratified An Agreement That Covered Facilities Beyond The Chicago District . . . . . . . 16

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Bailey v. United States,
54 Fed. Cl. 459 (2002) . . . . . 19

California Sand and Gravel, Inc. v. United States,
22 Cl. Ct. 19 (1990), aff'd, 937 F.2d 624 (Fed. Cir. 1991) (table),
cert. denied, 502 U.S. 1057 (1992) . . . . . 19

City of El Centro v. United States,
922 F.2d 816 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991) . . . . . 18

Cruz-Pagan v. United States,
35 Fed. Cl. 59 (1996) . . . . . 14

E.C. McAffee A/C Bristol Metal Industries of Canada Ltd. v. United States,
832 F.2d 152 (Fed. Cir. 1987) . . . . . 3

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . 16

Garza v. United States,
34 Fed. Cl. 1 (1995) . . . . . 11

Gutz v. United States,
45 Fed. Cl. 291 (1999) . . . . . 4

H. Landau & Co. v. United States,
886 F.2d 322 (Fed. Cir. 1989) . . . . . 14, 16

Interstate Gen. Govt. Contractors, Inc. v. Stone,
980 F.2d 1433 (Fed. Cir. 1992) . . . . . 10

McAfee v. United States,
46 Fed. Cl. 428 (2000) . . . . . 11

Newsom v. United States,
230 Ct. Cl. 301, 676 F.2d 647 (1982) . . . . . 10

P.R. Burke Corp. v. United States,
277 F.3d 1346 (Fed. Cir. 2002) . . . . . 10

San Carlos Irr. and Drainage Dist. v. United States,
877 F.2d 957 (Fed. Cir. 1989) . . . . . . . . . . 6, 7

Sylvia Elec. Products, Inc. v. United States,
198 Ct. Cl. 106, 458 F.2d 994 (1972) . . . . . . . . . . 3

Trauma Serv. Group v. United States,
104 F.3d 1321 (Fed. Cir. 1997) . . . . . . . . . . 18

Triax Pac., Inc. v. West,
130 F.3d 1469 (Fed. Cir. 1997) . . . . . . . . . . 10

FEDERAL STATUTES

5 U.S.C. § 552 et seq. . . . . . . . . . . 12

39 U.S.C. § 104 . . . . . . . . . . 12

39 U.S.C. § 401 . . . . . . . . . . 12

39 U.S.C. § 410 . . . . . . . . . . 12

39 U.S.C. § 411 . . . . . . . . . . 12

OTHER AUTHORITY

J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982) . . . . . . . . . . 14

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GEMINI ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 04-166C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF'S POST-TRIAL BRIEF**

Pursuant to the Court's order, dated September 24, 2004, and Appendix A of the Rules of the United States Court of Federal Claims, defendant, the United States, respectfully submits this reply to plaintiff's post-trial brief. In support of this reply, we rely upon the evidence submitted at trial and subsequent to trial, as well as the parties' post-trial briefs.

In our opening brief, we established that there was no agreement between the Government or the United States Postal Service ("Postal Service" or "USPS") and plaintiff, Gemini Electronics, Inc. ("Gemini"), for the provision of telecommunications services beyond the Chicago District of the Postal Service. We also established that the Government did not breach the October 1999 public telecommunications service agreement. Lastly, we established that Rufus Porter, former District Manager and Postmaster for the Postal Service's Chicago District, did not have the authority to enter into an agreement with Gemini for telecommunication services beyond the Chicago District.

In its post-trial brief, Gemini argues that the October 1999 agreement was ambiguous and because the Government allegedly drafted the agreement, the ambiguity should be resolved in favor of Gemini's interpretation of the agreement. Gemini further argues that Mr. Porter had both

express and implied authority to enter into an agreement with Gemini for telecommunications services beyond the Chicago District. Finally, Gemini argues that the actions of both Mr. Porter and Gerald Kubick, the Plant Manager at the O'Hare Airport Mail Center, ratified the October 1999 agreement to extend beyond the Chicago District. Gemini's arguments are based upon misstatements of the witnesses' trial testimony, are unsupported by the record and applicable authority, and are contrary to law and controlling precedent. For the reasons addressed in our opening brief and below, this Court should reject Gemini's complaint for breach of contract.

## ARGUMENT

### I. Gemini Was On Notice That The October 1999 Agreement Was Limited To The Chicago District

Contrary to Gemini's contentions, Pl. Br. at 27, 28, 41,[1] Gemini was clearly on notice that the October 1999 agreement was to cover only Postal Service facilities within the Chicago District. Phyllis Flynn, a Telecommunications Specialist with the Information Systems Department of the Postal Service in Chicago, testified that she personally informed Mr. Wilson during the bidding process that the agreement would be limited to the Chicago District based upon the limited authority of the Chicago District's staff. Tr. 301:19-24 (Flynn).[2] In addition, Ms. Flynn provided Gemini (as well as the other bidders) with a "station listing" of all Postal Service facilities within the Chicago District which were to be covered by the agreement.

---

[1] "Pl. Br. at __" refers to a specific page number of plaintiff's corrected post-trial brief, filed November 18, 2004. "Def. Br. at __" refers to a specific page number of defendant's post-trial brief, filed October 15, 2004.

[2] "Tr.__:__" refers to a specific page and line number from the trial transcript of August 16-18, 2004. The name in parentheses following the transcript cite denotes the name of the witness whose testimony has been cited.

Tr. 277:14-17, 297:18-25 – 298:1-8 (Flynn). Within one week of the agreement's execution, Ms. Flynn also copied Gemini (and Rufus Porter) on a letter she wrote to Ameritech,[3] advising Ameritech that the Postal Service and Gemini had "entered into an agreement . . . to provide pay phone service for the Chicago District." JE11.[4] The letter also served to authorize Gemini to install its telephone line services in the postal facilities referenced in an attachment. Id. At no time did Gemini challenge the representation in Ms. Flynn's letter, JE11, that the agreement was for pay phone service "for the Chicago District." Accordingly, Gemini was clearly on notice that the agreement was limited to the Chicago District.

Moreover, as we previously demonstrated in our opening brief, Def. Br. at 30-31, Gemini's admissions in its District Court complaint – that the October 1999 agreement was for services within the Chicago District, JE4, JX4.3-4.4, ¶¶ 12-13 – clearly refute Gemini's post-hoc argument that the October 1999 agreement was for areas beyond the Chicago District. E.C. McAffee A/C Bristol Metal Industries of Canada Ltd. v. United States, 832 F.2d 152, 154 (Fed. Cir. 1987).

II. The Parol Evidence Rule May Be Used To Determine The Parties' Intent

As indicated in our opening brief, the Court may look to parol evidence to determine the parties' intent. Sylvia Elec. Products, Inc. v. United States, 198 Ct. Cl. 106, 458 F.2d 994, 1005

---

[3] Up until the time the October 1999 agreement with Gemini was executed, Ameritech had been providing telecommunications services to Postal Service facilities in the Chicago District as well as other districts such as Northern Illinois and Central Illinois. Tr. 278:16-25 – 270:1-9 (Flynn).

[4] "JE__" refers to the parties' joint trial exhibits. "JX__" refers to a specific page number of the joint trial exhibits. "DE__" refers to defendant's trial exhibits. "DX__" refers to a specific page number of defendant's trial exhibits.

(1972). Gemini agrees. See Pl. Br. at 37-39. In this case, because there is a dispute regarding the scope of the "premises" to be covered by the agreement and what document, if any, constitutes "Exhibit A" to the agreement, JE5, JX5.2 ¶ 6, those matters can perhaps be better understood based upon consideration of the circumstances which surrounded consideration of the premises at issue and formation of "Exhibit A." Gutz v. United States, 45 Fed. Cl. 291, 297 (1999). The evidence which the Court can consider in determining the intent of the parties regarding the scope of the premises to be defined by "Exhibit A" and whether the scope extended beyond the Chicago District was fully discussed in our opening brief and will be only briefly addressed here in response to Gemini's post-trial brief.

### A. Representations Of J.T. Weeker's Intentions Do Not Provide The Basis For An Enforceable Agreement Beyond The Chicago District

Gemini refers to a number of meetings involving Rufus Porter, J.T. Weeker, former Area Vice President for the Great Lakes Area of the Postal Service, and Gemini's President and Chief Executive Officer, Willie Wilson, to support its argument that J.T. Weeker's intention was to have Gemini provide telecommunications services in Postal Service facilities beyond those in the Chicago District. However, even assuming Mr. Weeker intended for Gemini to expand its services beyond the Chicago District, Mr. Weeker's oral expression of such intent was not properly incorporated into the written agreement of October 1999, as required (JE5, JX5.3 ¶ 15; Tr. 460:4-7 (Infanger)), nor was an agreement for Gemini's services beyond the Chicago District authorized by the Government.

First, Mr. Weeker was not involved in negotiating the specific terms of the agreement for the Government – Rufus Porter and Maria Furhmann (now, Infanger), counsel for the Postal

Service, were. See JE5; JE8; JE12; DE200; DE201; Tr. 198:14-25 – 199:1, 221:1-25 – 224:1-13 (Porter); Tr. 426:2-11, 427:9-13, 440:7-25 – 441:1-2; 447:13-25 – 454:1-14 (Infanger). Second, Mr. Weeker did not execute the October 1999 upon behalf of the Government – Rufus Porter did.[5] See JE5, JX5.4. Third, notwithstanding any representation of Mr. Weeker's intent for Gemini to eventually expand its telecommunication services beyond the Chicago District, Mr. Porter made clear at trial that such an expansion was not contemplated or incorporated into the October 1999 agreement:

> Q: You testified that it was your understanding that you thought Gemini would eventually take over all the Ameritech pay phones.
>
> A: That's correct.
>
> Q: And would that include pay phones outside the Chicago district?
>
> A: That's correct.
>
> Q: But would those pay phones that were outside the Chicago district be covered by this agreement?
>
> A: The agreement that I signed in October, no, it would not have.

Tr. 217:21-25 – 218:1-6 (Porter). Mr. Porter unequivocally stated that his authority (as District Manager for the Chicago District) to contract upon behalf of the Postal Service with respect to the agreement he entered into with Gemini in October 1999, was limited to the Chicago District. Tr. 183:20-25 – 184:1-5, 214:17-25 – 215:1-4 (Porter). In order for Gemini to expand their pay phone service beyond the Chicago District, Mr. Porter testified that Gemini would have had to

[5] Although there is no evidence in the record regarding the limitations of Mr. Weeker's authority, Mr. Porter's authority to enter into the agreement was limited only to the Chicago District. Tr. 183:20-25 – 184:1-5, 214:17-25 – 215:1-4 (Porter).

enter into separate agreements with the other Postal Service districts – something which Gemini did not do. Tr. 218:7-25 (Porter); Tr. 151:2-6 (Wilson). Gemini, understanding this as well, attempted to enter separate agreements with other Postal Service districts with the assistance of Mr. Porter.

B. Gemini Had No Enforceable Agreement With The O'Hare Airport Mail Center

As indicated in our opening brief, Def. Br. at 35-37, Gerald Kubick, Plant Manager of the Chicago Airmail Facility/O'Hare Airport Mail Center ("Airport Mail Center") was asked by Mr. Porter to meet with Gemini regarding the placement of additional phones at the Airport Mail Center.[6] Tr. 372:12-22 (Kubick). Thereafter, Mr. Kubick orally permitted Gemini to install four or five of its payphones at the Airport Mail Center.[7] Tr. 375:4-15 (Kubick). Mr. Kubick's permission for the installation of these few phones was never reduced to writing and was eventually withdrawn by Mr. Kubick. Tr. 377:12-16, 378:14-25 – 380:1-25 (Kubick). Indeed, the record does not contain evidence of any legally enforceable agreement for the placement of the four or five pay phones at the Airport Mail Center, let alone a breach thereof. See San Carlos

---

[6] At all relevant times, the Airport Mail Center was not a part of the Chicago District of the Postal Service – it was a separate facility that serviced all Postal Service districts in the Great Lakes Area (including Chicago, Central Illinois, and Northern Illinois). Tr. 369:23-25 – 370:1-9 (Kubick). Gemini had installed its pay phones at another Postal Service facility at the O'Hare Airport located at 11560 West Irving Park Road – a facility within the Chicago District. Tr. 366:9-21, 369:3-6, 370:20-25 – 372:1-11 (Kubick); JE7. There is no evidence that Gemini was requested to remove its phones from this facility.

[7] When Gerald Kubick permitted Gemini to install four or five of its pay phones at his facility, he was unaware that the Postal Service had executed a written agreement with Gemini in October 1999. Tr. 376:20-23 (Kubick). Further, any permission extended by Gerald Kubick to Gemini for the installation of Gemini's pay phones in the Airport Mail Center was limited to what Mr. Kubick either approved or disapproved and, contrary to Gemini's contention, Pl. Br. at 30-31, cannot be viewed as a part of the express agreement executed in October 1999.

Irr. and Drainage Dist. v. United States, 877 F.2d 957, 959 (Fed. Cir. 1989).

Gemini misconstrues and misstates the testimony of Mr. Kubick by suggesting, wrongly and without support, that Mr. Kubick, as Plant Manager for the Airport Mail Center, had authority to bind the Postal Service/Government in contract beyond the geographic area of his responsibility. See Pl. Br. at 21, fn. 11. There is no evidence to support this statement and it clearly is an inaccurate representation of the testimony offered by Mr. Kubick.[8] Gemini continues by incorrectly asserting, again without support, that Mr. Kubick's testimony contradicts that offered by Rufus Porter and Maria Infanger, both of whom testified that "they did not believe district managers had the authority to enter into contracts with agreements that binded USPS." Pl. Br. at 21, fn. 11. This assertion is not only incorrect, but makes no sense.[9] Mr. Porter, Ms. Infanger, and Mr. Kubick all consistently testified that district/plant managers had the authority to enter into agreements upon behalf of the Postal Service for the districts or areas they managed. Tr. 183:20-25 – 184:15, 237:3-25 – 238:1-2 (Porter); 377:12-25 – 378:1-6, 386:7-15 (Kubick); Tr. 445:9-25 – 446:1-17 (Infanger). Here, Gemini suggests that the Court disregard the testimony of Mr. Porter and Ms. Infanger and adopt the argument it offers regarding

[8] Mr. Kubick testified that as Plant Manager for the Airport Mail Center, and as the person "responsible for the budget and everything that goes in and out of that building," he had the authority to permit Gemini to install the four of five pay phones that were installed in his facility. Tr. 377:12-23, 386:7-15 (Kubick). As the record reflects, at no time did Mr. Kubick testify, as Gemini argues, that he "had the right to enter into a binding agreement on behalf of USPS that affected an area beyond the scope of his work responsibility." Pl. Br. at 21, fn. 11. Accordingly, Gemini cannot leap to the improper conclusion that, because Mr. Kubick could authorize agreements outside his area of responsibility, "so would the same right [have] inured to Mr. Porter." Id.

[9] If district managers have no authority to enter into contracts that bind the Postal Service, Mr. Porter would not have had the authority to enter the agreement with Gemini in October 1999.

Mr. Kubick's testimony. For the reasons stated above, the Court should reject Gemini's unsupported and inaccurate factual assertions and argument on this point.

C. Gemini Had No Enforceable Agreement With The Central Illinois District

The only other evidence of Gemini's attempt to expand its services beyond the Chicago District occurred in July 2000, approximately nine months following execution of the October 1999 agreement. DE202, DE203. At that time, Rufus Porter called James Holmes, District Manager of the Postal Service's Central Illinois District, and suggested he meet with Gemini to "see what they had to offer." Tr. 406:7-14, 409:3-14 (Holmes). Mr. Porter explained to Mr. Holmes that he had an agreement with Gemini in his cluster [Chicago] and thought Holmes "might be interested in doing something in [his] cluster [Northern Illinois]." Tr. 409:3-14 (Holmes). Although Ameritech was already providing pay phone service to the Central Illinois District at that time, Mr. Holmes agreed to meet with Gemini and subsequently received a written proposal from Gemini for the provision of pay phone service for several facilities within the Central Illinois District. Tr. 411:1-25 – 412:1-12, 417:2-10 (Holmes); DE202; DE203; DE204. Gemini, however, never pursued its proposal with Mr. Holmes, and likewise, Mr. Holmes had no further contact with Gemini. Tr. 420:19-25 (Holmes).

Gemini's post-trial brief makes no mention of Gemini's attempt to contract for pay phone service with the Central Illinois District through its District Manager, James Holmes. Similarly, other than the four or five Gemini pay phones Gerald Kubick had removed at the Airport Mail Center, Gemini does not argue or identify any evidence to support the allegation in its complaint that "[s]hortly after the commencement of the contract, agents of Defendant USPS willfully, wantonly and discriminatorily denied Plaintiff Gemini access to, occupancy of and prevented

Plaintiff Gemini from installing and maintaining telecommunications equipment of Defendant USPS facilities." JE3, JX3.4 ¶ 9. As the evidence clearly demonstrates, the Postal Service did no such thing.

III. Any Ambiguity In The October 1999 Agreement Should Be Resolved Against Gemini

In response to Gemini's incorrect assertion and argument that the Government drafted the agreement in this case and that, accordingly, any ambiguous provisions should be construed against the Government, Pl. Br. at 38-39, we respond as follows.

To begin with, the evidence demonstrates that the first and second drafts of the agreement were prepared by Gemini, not the Government. Tr. 426:2-11, 427:9-13, 440:7-26 – 441:1-6, 443:6-19, 444:5-10 (Infanger); DE200; DE201. Maria Infanger of the Postal Service's legal department in Chicago testified that she proposed changes and additions to the draft agreements submitted by Gemini in order to protect the interests of the Government. Id. Further, the issue in this case is whether the agreement was limited to Gemini's placement of pay phones within the Chicago District of the Postal Service. As such, the only document which would have defined the limits of the agreement is what is referred to in paragraph six of the agreement (Premises) as "Attached Exhibit A." JE5, JX5.2 ¶ 6. Although Gemini never specifically identified a document in the record which represents what it purports to be "Exhibit A" to the agreement, Tr. 170:14-25 (Wilson), Gemini disputes what the Government witnesses have identified as "Exhibit A" (a list of Postal Service facility addresses and phone numbers from within the Chicago District – see JE12; Tr. 221:23-25 – 223:1-23 (Porter); 317:10-25 – 320:1-11 (Flynn); Tr. 452:11-25 – 454:1-17 (Infanger)) to the extent that the document does not include locations from outside the Chicago District. In addition, it is not clear whether "Exhibit A" was attached to the

agreement at the time of execution or produced shortly thereafter. JE12; Tr. 170:14-25 (Wilson); Tr. 221:23-25 – 223:1-23 (Porter); 317:10-25 – 320:1-11 (Flynn); Tr. 452:11-25 – 454:1-17 (Infanger). However, even if the Government had drafted the agreement in this case, to the extent that Gemini now claims an ambiguity in the agreement's definition of the premises (and whether it included an "Exhibit A"), JE5, JX5.2 ¶ 6, such an ambiguity was clearly patent[10] and triggered a duty upon Gemini to inquire about that ambiguity before it bid on the contract. Interstate Gen. Govt. Contractors, Inc. v. Stone, 980 F.2d 1433, 1434-35 (Fed. Cir. 1992) (citing Newsom v. United States, 230 Ct. Cl. 301, 676 F.2d 647, 649 (1982)). Absent such an inquiry, a patent ambiguity in a contract will be resolved against the contractor. P.R. Burke Corp. v. United States, 277 F.3d 1346 (Fed. Cir. 2002) (citing Triax Pac., 130 F.3d at 1475. Here, there is no evidence of any inquiry upon the part of Gemini regarding the scope of the agreement.

As previously demonstrated, the evidence is clear that the Government intended for the agreement executed in October 1999 by Rufus Porter and Willie Wilson to cover only Postal Facilities in the Chicago District. The evidence is also clear, that Mr. Porter's authority in entering the October 1999 agreement was limited to the Chicago District. Without a duly authorized agreement for telecommunications services beyond the Chicago District, the Government cannot be found to be in breach of such an agreement.

## IV. Gemini Fails To Establish That Rufus Porter Had Express Authority To Enter Into An Agreement That Covered Facilities Beyond The Chicago District

In its post-trial brief, Gemini argues at various points that (1) Rufus Porter had express

[10] Because the critical dispute in this case involves the scope of the premises to be covered by the agreement, any ambiguity regarding the scope can be considered to be so "patent and glaring" that it was unreasonable for Gemini not to have discovered and inquired about it. Triax Pac., Inc. v. West, 130 F.3d 1469, 1475 (Fed. Cir.1997).

authority to enter into an agreement with Gemini that covered facilities beyond the Chicago District, (2) Mr. Porter had implied authority to enter into such an agreement, (3) Mr. Porter had apparent authority to enter into such an agreement, and (4) the Postal Service ratified such an agreement. Gemini's arguments on those points are both legally and factually flawed.

As Gemini correctly acknowledges at page 35 of its brief, "A government agent possesses express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms." McAfee v. United States, 46 Fed. Cl. 428, 435 (2000) (citing Garza v. United States, 34 Fed. Cl. 1, 17 (1995)). Yet Gemini can point to no such Constitutional, statutory or regulatory grant of authority. Indeed, the record is devoid of any express, unambiguous provision granting district managers within the Postal Service the authority to enter into binding agreements that apply beyond their geographic districts.

Rather incredibly, Gemini claims that "a mere perusal of the USPS web site clearly indicates that 'an operations manager, a postmaster or district manager has contracting authority to bind the government into a legal contract.[']" Pl. Br. at 31. Gemini cites an internet address, www.usps.com/cpim/stp/manuals, in support of its assertion. Id. However, the cited web site does not exist, and the quoted language does not appear anywhere on the Postal Service's web site.[11] In addition, the quoted language is not found in the evidence submitted in this case.

---

[11] In an attempt to verify the information cited by Gemini, we searched www.usps.com and were able to find a similar site: www.usps.com/cpim/manuals/pm/pm.htm. That site contains electronic versions of the various editions of the Postal Service Purchasing Manual, as well as its predecessor, the Procurement Manual. A search of each of those documents reveals that the language cited by Gemini does not actually appear anywhere in those documents. We also searched all available official Postal Service documents and were unable to find one containing the statement cited by Gemini.

At page 30 of its brief, Gemini quotes Maria Infanger as having testified "that she was unable to find anything that would have limited the authority, actual or implied, of Mr. Porter to enter into the contract with Gemini even if the contract covered areas beyond the Chicago District." That assertion is not only based upon the false premise that express authority can be created by the absence of any written provision withholding such authority, it also relies on a misrepresentation of Ms. Infanger's testimony. Despite purporting to quote Ms. Infanger's testimony directly, Gemini offers no citation to the transcript. In fact, Ms. Infanger never uttered the quoted words during her trial testimony. Ms. Infanger's actual trial testimony was that there is no document authorizing Mr. Porter to enter into an agreement upon behalf of the Chicago District. Tr. 478:5-11 (Infanger). Ms. Infanger further testified that she did not know whether the authority of contracting officers within the Postal Service was limited to any particular geographic area. Tr. 502:9-23 (Infanger). However, that statement does not apply to Mr. Porter because Mr. Porter was not a contracting officer. Tr. 178:9 (Porter). Ms. Infanger also testified that she understood the contract with Gemini to be limited to the Chicago District because Mr. Porter, who was going to sign the contract, was only in charge of the Chicago District. Tr. 445:9-23 (Infanger); see also Tr. 451:22-25 – 452:1-2 (Infanger).

Gemini claims that Mr. Porter's express authority to enter into an agreement that applied beyond the Chicago District "was granted by Federal [s]tatute." Pl. Br. at 34. Gemini makes a similar claim at page 36 of its brief ("Much of this authority was derived from Title 5 U.S.C. 552 et seq."). However, Gemini cites no statutory language that supposedly grants such authority. The statutory provisions cited by Gemini in support of its claim of statutory authority, "5 U.S.C. 552; 39 U.S.C. 401, 104, 410, 411, 20058, 501, 265605, Subchapter 8," consist of selected

provisions of the Freedom of Information Act and Postal Reorganization Act, none of which address the contracting authority of district managers within the Postal Service.[12]

Gemini's brief also misrepresents the grant of contracting authority contained in the Postal Service's Purchasing Manual. Although Section 1.4.1 of the Purchasing Manual clearly states that the Vice President, Purchasing and Materials is the individual with unlimited contracting authority, JE18, p. 9, Gemini appears to assert that J.T. Weeker possessed unlimited contracting authority. Pl. Br. at 35. However, J.T. Weeker was the Vice President for the Great Lakes Area, Tr. 177:17-19 (Porter), not the Vice President for Purchasing and Materials. Keith Strange, with whom Gemini met separately, was the Vice President for Purchasing and Materials. JE18 (see second unnumbered page of Transmittal Letter signed by A. Keith Strange, Vice President, Purchasing and Materials, dated January 31, 1997); Tr. 84:13-22 (Wilson). Contrary to Gemini's assertion, where the Postal Service has granted unlimited contracting authority to only one particular Vice President, it has not simultaneously granted such authority to anyone with the title of Vice President.

## V. Gemini Fails To Establish That Rufus Porter Had Implied Authority To Enter Into An Agreement That Covered Facilities Beyond The Chicago District

Gemini's arguments concerning whether Rufus Porter had implied authority to enter into an agreement that extended beyond his district (Chicago) demonstrates a fundamental misunderstanding of the doctrine of implied actual authority.[13] Indeed, much of Gemini's

---

[12] Several of the provisions in Title 39, United States Code, as cited by Gemini, are in fact nonexistent.

[13] At page 36 of its brief, Gemini actually cites the legal standard for an implied-in-fact contract, rather than for implied actual authority. These are entirely different legal concepts.

argument on implied authority is more properly treated as an argument that Mr. Porter had apparent authority. The proper inquiry for purposes of implied authority is whether the authority to contract for pay phone service in facilities beyond the Chicago District was an integral part of Mr. Porter's duties as District Manager for the Chicago District. Such authority clearly was not integral to Mr. Porter's duties, and therefore Gemini's implied authority argument must fail.

"Authority to bind the government is generally implied when such authority is considered to be an integral part of the duties assigned to a government employee." H. Landau & Co. v. United States, 886 F.2d 322, 324 (Fed. Cir. 1989) (quoting J. Cibinic & R. Nash, Formation of Government Contracts 43 (1982)). "[T]he doctrine [of implied actual authority] serves to fill in the gap when an agency reasonably must have intended certain representatives to possess contracting authority but it failed expressly to grant that authority." Cruz-Pagan v. United States, 35 Fed. Cl. 59, 62 (1996).

Mr. Porter described his responsibilities as district manager in the following manner:

> Q: And can you summarize for the Court what the responsibilities you had as a district manager and postmaster were at that time?
>
> A: I was responsible for the administration functions of the district, which included human resources, marketing, purchasing, those related kinds of activities. I was also responsible for all the stations and branches in the City of Chicago, which span an area as far north as Niles, as far south as Evergreen and Cicero.
>
> Q: And were those areas part of what the Postal Service referred to as the Chicago District?
>
> A: Yes, it was.

Tr. 175:4-15 (Porter). Mr. Porter further testified that he had "the jurisdiction over small contracts in the Chicago District." Tr. 178:9-11 (Porter). Mr. Porter never testified that his

responsibilities extended beyond the geographic boundaries of his district.

Consistent with Mr. Porter's description of his duties, the Postal Service's Administrative Support Manual (excerpted at JE15) describes the duties of a district manager with respect to telecommunications in the following manner: "The district manager, through the information systems manager at the district, manages . . . telecommunications systems within a geographic boundary . . . ." JE15, JX15.3. The geographic boundary referenced in that provision of the manual is the boundary of the district manager's respective district. Tr. 183:14-25 – 184:1-17 (Porter).

Gemini alleges without support that "[Mr.] Porter's areas of responsibilities included the Chicago District as well as a portion of the district in the Northern Illinois – O'Hare facility." Pl. Br. at 33. It is unclear what Gemini's reference to "the district in the Northern Illinois – O'Hare facility" means; however, the evidence cited above clearly establishes that Mr. Porter's responsibilities were actually limited to the Chicago District itself.[14]

The record demonstrates that Mr. Porter's duties and responsibilities were limited to the geographic boundaries of the Chicago District.[15] Therefore, any implied actual contracting

---

[14] Mr. Porter testified at one point that "the administration portion" of the O'Hare Airport Mail Center fell under the Chicago District. Tr. 177:3-4 (Porter). However, he also acknowledged that Gerald Kubick, not he, was the manager of that O'Hare facility. Tr. 177:5-10 (Porter). Mr. Porter also testified that the Gemini pay phones installed in the O'Hare Airport Mail Center and later removed at Mr. Kubick's direction, belonged to Mr. Kubick's area and not his. Tr. 228:15-18 (Porter).

[15] Gemini asserts in its brief at page 21, fn. 11, that "if [Gerald] Kubick had the right to enter into a binding agreement on behalf of USPS that affected an area beyond the scope of his work responsibility, so would have the same right inured to Rufus Porter." However, Gemini's premise that Mr. Kubick's authority extended beyond the walls of the O'Hare Airport Mail Center is utterly false. Mr. Kubick testified that he was authorized to place phones in his facility because of his status as Plant Manager of that facility. Tr. 377:17-23 (Kubick). He further

authority Porter had was similarly limited to the facilities within the Chicago District.

VI. Apparent Authority Is Insufficient To Bind The Government

Gemini states that Rufus Porter entered into the October 1999 agreement with Gemini "with apparent authority." Pl. Br. at 30. Gemini also argues that "[Mr.] Porter held himself out to be the person with the responsibility and authority to oversee contracts and procurement at USPS." Pl. Br. at 33. To the extent Gemini contends that the Government should be bound upon the basis of apparent authority, that argument is legally insufficient. "[A]pparent authority will not suffice to hold the government bound by the acts of its agents . . . ." H. Landau, 886 F.2d at 324 (citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947)).

VII. Gemini Fails To Establish That An Authorized Agent Of The Postal Service Ratified An Agreement That Covered Facilities Beyond The Chicago District

Gemini argues that because the Postal Service failed to rescind the October 1999 agreement, "the actions of the government ratified the contract in favor [of] Mr. Wilson's interpretation granting him authority to install phones beyond . . . the Chicago District." Pl. Br. at 33. Gemini also states that "the actions by Mr. Kubick and Mr. Porter post-contract signing on October 21, 1999 indicate that the parties intended to ratify the implicit and explicit understanding of the coverage area." Id. With respect to ratification, Gemini misrepresents the

---

testified that he was only in charge of his facility and the only phones for which he gave authorization were those to be installed in his facility. Tr. 396:24-25 – 397:1 (Kubick). Moreover, Mr. Kubick testified that the only phones he had removed in November 2000 were those four or five Gemini phones located in his facility, the Airport Mail Center Tr. 398:16-25 - 399:1-10 (Kubick). Thus, contrary to Gemini's assertion, Mr. Kubick's testimony about the limits of his authority actually support the Government's position that Rufus Porter, as District Manager for the Chicago District, had no authority to permit the installation of Gemini pay phones outside his area of responsibility (i.e., the Chicago District itself).

factual record and ignores the relevant legal standard.

First, Gemini states that in January 2000, "Willie Wilson informed Maria Infanger that he had been given the contract for the Great Lakes Region." Pl. Br. at 32. Such evidence might help Gemini's case, if only it actually existed. To the contrary, however, Ms. Infanger testified that Mr. Wilson "had indicated that he'd just come from the memorial service and that prior to Mr. Weeker passing away, that he had conversations with him about entering into an agreement for installation of pay phones in the Great Lakes area . . . ." Tr. 456:17-23 (Infanger). Having conversations about entering into an agreement does not equate to entering into an agreement. Indeed, for Mr. Wilson to have stated in January 2000 that he merely "had conversations" with Mr. Weeker about entering into an agreement for the Great Lakes Area demonstrates that even Mr. Wilson did not understand the October 1999 agreement as covering the Great Lakes Area. Mr. Wilson's statement also reflects his understanding that Gemini was required to enter into a separate agreement with the Postal Service in order to expand its pay phone service beyond the Chicago District.[16]

Second, Gemini states that after it was initially denied permission to install phones at the O'Hare Airport Mail Center, "Mr. Porter telephoned Gerald Kubick on behalf of Mr. Wilson to inform [him] that Gemini had been given a contract at Kubick's facility." Pl. Br. at 32. Once again, the actual evidence in this case is far less favorable for Gemini than Gemini's unsupported representation of the evidence. Mr. Kubick testified that the first time he heard of Gemini was when Mr. Porter called Mr. Kubick to ask him to meet with Gemini about whether Mr. Kubick's

[16] Mr. Porter similarly understood that any expansion of Gemini's pay phone service beyond the Chicago District was by way of a separate agreement. Tr. 217:21-25 – 218:1-21 (Porter).

facility needed any additional pay phones. Tr. 372:15-25 (Kubick). Mr. Kubick then testified that when he said his facility did not need any additional phones, Mr. Porter called him a day or two later, Tr. 373:21-22 (Kubick), and again asked him to look around to see if he needed additional phones. Tr. 374:10-12 (Kubick). Mr. Kubick testified that he was not aware of any previous contracts between Gemini and the Postal Service. Tr. 376:20-23 (Kubick). Likewise, Mr. Porter testified that he never had any "contract discussions" with Mr. Kubick. Tr. 244:4-6 (Porter).

Another factual misrepresentation with respect to ratification appears at pages 31-32 of Gemini's brief, where Gemini states that "[f]or over a year, Mr. Porter assisted Mr. Wilson in installing phones and locations which included the Chicago District and the Great Lakes region and in Northern Illinois." However, there is no evidence to support this claim. Indeed, the evidence demonstrates that the only phones upon which Gemini paid commissions were those located within the Chicago District. See JE7 (listing locations and phones for which Gemini was paying commissions); JE17A (Attachment 1 to Defendant's Post-Trial Brief) (listing Postal Service facilities and identifying the district within which each facility resides); see also Tr. 175:1-12 (Porter); Tr. 368:8-25 – 372:1-11 (Kubick).

Compounding Gemini's factual misrepresentations with respect to ratification is Gemini's failure to establish the legal elements of ratification. Like creation of a contract in the first instance, ratification of a contract with the Government requires a Government representative with actual authority to bind the Government. Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed. Cir. 1997) (citing City of El Centro v. United States, 922 F.2d 816, 820 (Fed. Cir. 1990), cert. denied, 501 U.S. 1230 (1991)). "The basic concept of ratification requires that a

superior official 'have authority to ratify, knowledge of a subordinate's unauthorized act, and then must confirm, adopt or acquiesce to the unauthorized action of his subordinate.'" Bailey v. United States, 54 Fed. Cl. 459, 506 (2002) (quoting California Sand and Gravel, Inc. v. United States, 22 Cl. Ct. 19, 27-28 (1990), aff'd, 937 F.2d 624 (Fed. Cir. 1991) (table), cert. denied, 502 U.S. 1057 (1992)).

Although Gemini claims that ratification of an agreement covering the entire Great Lakes Area could be inferred from the actions or inaction of Rufus Porter, Maria Infanger, Gregg Sackrider, Phyllis Flynn or Gerald Kubick, Pl. Br. at 32-33, there is no evidence that any of those individuals possess actual authority to bind the Government to such an agreement.[17] The only individuals who even arguably had the authority to ratify an agreement for the entire Great Lakes Area were J.T. Weeker and his successor, Danny Jackson. However, neither of those individuals actually ratified an agreement for the entire area.

As discussed in detail elsewhere in this brief and in our opening brief, J.T. Weeker may well have intended for Gemini to eventually have access to the entire Great Lakes Area, but he envisioned that such expansion would occur through separate agreements with each Great Lakes Area district. Mr. Weeker never adopted Mr. Porter's alleged unauthorized contractual commitment, and therefore it cannot be said that Mr. Weeker ratified an agreement for the entire area. Likewise, Mr. Jackson never ratified such an agreement – in fact, according to Willie Wilson, when Gemini met with Mr. Jackson after Gemini was allegedly stopped from installing

---

[17] Although Gemini argues that Mr. Porter had actual authority to enter into an agreement covering the entire Great Lakes Area, ratification is only an issue if the initial contractual commitment was unauthorized. Therefore, for purposes of ratification analysis, one must assume that Mr. Porter lacked authority to contract for the entire area in the first instance. Clearly, Mr. Porter could not have ratified his own unauthorized commitment.

pay phones at O'Hare, Mr. Jackson stated that authority to enter into such agreements had been taken out of his hands. Tr. 82:13-18 (Wilson). After Gemini met with Postal Service officials in Washington, D.C., Gemini was sent back to Mr. Jackson. Tr. 90:2-16 (Wilson). However, Mr. Jackson did not ratify Gemini's alleged agreement for the entire Great Lakes Area; he simply stated that he would "get back with" Gemini. Tr. 90:13-25 - 90:1-2 (Wilson). Therefore, there is nothing in either Mr. Weeker or Mr. Jackson's actions subsequent to the October 1999 agreement that could be interpreted as a ratification of an agreement for the entire Great Lakes Area.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in our opening brief, we respectfully request that the Court enter judgment in favor of the United States and dismiss Gemini's complaint for breach of contract.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Carolyn J. Craig
CAROLYN J. CRAIG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7561
Fax: (202) 305-7644
E-mail: carolyn.craig@usdoj.gov

OF COUNSEL

CHRISTOPHER J. BURTON
Commercial and Appellate Litigation
U.S. Postal Service
475 L'Enfant Plaza, S.W.
Room 6323
Washington, D.C. 202050-1127
Tel: (202) 268-3069
Fax: (202) 268-5287
E-mail: christopher.j.burton@usps.gov

November 24, 2004

Attorneys for Defendant