**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| GEMINI ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 04-166C |
| | ) | (Judge Horn) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL POST-TRIAL BRIEF**

Pursuant to the Court's order, dated December 17, 2004, defendant, the United States, respectfully submits this supplemental post-trial brief upon the issue of whether and how the Postal Service's Purchasing Manual ("PM") affects the contract under review. Defendant submits that the PM does not apply to the contract purchasing activities and not to the grant of a license. Assuming, arguendo, that the PM does apply, its provisions support defendant's position in this case.

ARGUMENT

I. The Purchasing Manual Does Not Apply To The October 1999 Agreement Between Gemini And The Postal Service

A. The Agreement Between Gemini And The Postal Service Was Not A Purchase

The Purchasing Manual itself states, "Except as noted in the PM, the PM applies to all purchasing activities." PM 1.1.1.c.[1] The term "purchasing" is defined in the PM as "[a]ll activities related to the purchase of supplies, services, equipment, design and construction related services, and mail transportation, including planning, solicitation, source selection, contract award, and contract administration." PM 1.6.2.o. Therefore, the PM applies to the agreement

[1] "PM __" refers to the Purchasing Manual filed at the Court's request on December 22, 2004.

between Gemini and the Postal Service only if it constitutes a purchase of supplies, services or equipment. However, the agreement between the Postal Service and Gemini constitutes a license rather than a purchase, and it is therefore not subject to the PM.

It is evident from the terms of the agreement that the Postal Service was not purchasing supplies or equipment from Gemini. Paragraph seven (7) of the agreement states, "All telecommunications equipment and related materials placed upon the premises by Gemini are the personal property of Gemini and shall be and remain the personal property of Gemini throughout the term." JE5, JX5.2.[2] Because Gemini retained all of its property interests in its equipment, the agreement clearly did not constitute a purchase of equipment by the Postal Service.

Although Gemini may argue that the agreement constituted a purchase of services, the terms of the agreement demonstrate that the agreement is more properly characterized as a license rather than a purchase of services. First, the agreement explicitly states at paragraph two (2) that it constitutes a license. JE5. Moreover, other terms of the agreement demonstrate that the Postal Service was giving Gemini the right to use Postal Service property to operate a pay phone business in exchange for a percentage of the revenue, rather than paying Gemini to provide a service. For example, the agreement does not require Gemini to install any minimum number of phones or to install phones in any minimum number of locations. Id. Additionally, paragraph seven (7) of the agreement gives Gemini the right, upon notice to the Postal Service, to remove any phones that are not generating sufficient revenue. JE5, JX5.2. Therefore, there is no identifiable service that Gemini is contractually required to perform.

---

[2] "JE__" refers to the parties' joint trial exhibits. "JX__" refers to a specific page number of the joint trial exhibits.

Because the Postal Service was not contracting for Gemini to perform any particular service, but instead was allowing Gemini to operate a pay phone business upon Postal Service property, the agreement between Gemini and the Postal Service was not a purchase. Accordingly, the agreement is not subject to the Purchasing Manual.

B. The Decision In AT&T Corporation v. United States Postal Service Does Not Control In This Case

The decision in AT&T Corporation v. United States Postal Service, 57 F.Supp.2d 518, 521 (N.D. Ill. 1997) (denying plaintiff's motion for summary judgment), which was identified in the Court's December 17, 2004 order, did state that a contract "for the management of public pay telephones in various locations across the U.S." was subject to the competitive procurement regulations contained in the Postal Service's Procurement Manual. AT&T Corp., 57 F.Supp.2d at 519, 521. However, the decision in AT&T Corp. should not be applied to the agreement between Gemini and the Postal Service because the agreement between Gemini and the Postal Service is distinguishable from the agreements at issue in AT&T Corp..

The agreements at issue in the AT&T Corp. case "involve provision of management services and other services for pay phones already installed at Postal Service facilities." AT&T Corp. v. United States Postal Service, 57 F.Supp.2d 522, 524-25 (N.D. Ill. 1998) (denying defendant's motion for summary judgment). Because those agreements require the contractor to provide services managing existing pay phones, they are analogous to a traditional purchase of services because the contractor performs specified tasks in exchange for financial compensation. Such arrangements are quite different from the one between Gemini and the Postal Service, under which Gemini is granted access to Postal Service property in order to install and operate its

own pay phones in exchange for commission payments to the Postal Service. Upon that basis, the present case is distinguishable from AT&T Corp..

II. The Purchasing Manual, If Applicable, Supports The Government's Position

Even if the Court determines that the agreement between Gemini and the Postal Service is subject to the Purchasing Manual, the provisions of the PM support the Government's position in this case, particularly with respect to the issue of authority. Because Gemini has not demonstrated that any Postal Service official with delegated contracting authority agreed to give Gemini access to facilities outside the Chicago District, the Postal Service is not contractually bound to give Gemini such access.

The Purchasing Manual states that the Vice President, Purchasing and Materials ("VP, P&M"), has unlimited contracting authority. PM 1.4.1. "The VP, P&M, has delegated contracting authority, including redelegation authority, throughout Postal Service purchasing organizations. An individual contracting officer's contracting and related authorities are enumerated in his or her letter of delegation." PM 1.4.2.a. "Contracting authority is delegated to named individuals, rather than to positions, based on the individual's education, experience and training. Only individuals with this delegated authority may contractually bind the Postal Service . . . ." PM 1.5.2. Therefore, under the PM, an individual may only bind the Postal Service contractually if he has a letter of delegation enumerating his contracting and related authorities. In this case, Rufus Porter, the Postal Service official who signed the agreement with Gemini, testified that he was not delegated any particular contracting authority in writing, Tr. 237:16-17

(Porter),[3] and Postal Service attorney Maria Infanger testified that there was no document that authorized Mr. Porter to enter into the agreement with Gemini. Tr. 478:5-11 (Infanger). Thus, if the strict requirements of the Purchasing Manual are applied to this case, Mr. Porter had no authority whatsoever to bind the Postal Service contractually.

To the extent Gemini argues that J.T. Weeker authorized Rufus Porter to enter into an agreement that extended beyond the Postal Service's Chicago District, the terms of the Purchasing Manual undermine Gemini's position. Even assuming that Mr. Porter had contracting authority over the Chicago District and Mr. Weeker had contracting authority over the entire Great Lakes Area (neither of which is established by way of a letter of delegation), there is no evidence that Mr. Weeker ever delegated any broader authority to Mr. Porter in writing as the PM requires. The Purchasing Manual states, "A contracting officer may take a contractual action (a purchase, modification, or termination) exceeding his or her authority after obtaining written approval of the proposed action from a contracting officer delegated and authorized to redelegate the required authority . . . ." PM 1.5.3.a. The record is devoid of any written delegation of authority from Mr. Weeker to Mr. Porter, and therefore Mr. Weeker could not have authorized Mr. Porter to enter into the agreement in accordance with the Purchasing Manual.

## CONCLUSION

The matters in dispute in this case are not affected by the provisions of the Purchasing Manual because it does not apply to contracts for licenses such as the one here. Moreover, if the PM did apply to the contract then, pursuant to its terms, the contract was unauthorized. Nothing

---

[3] Tr.__:__" refers to a specific page and line number from the trial transcript of August 16-18, 2004. The name in parentheses following the transcript cite denotes the name of the witness whose testimony has been cited.

in the PM addresses issues such as whether there was ever a meeting of the minds upon an agreement that extended beyond the Chicago District or how ambiguities in the agreement should be resolved. The resolution of those issues is governed by general principles of Government contract law, rather than by any provision in the Purchasing Manual.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Mark A. Melnick
MARK A. MELNICK
Assistant Director

s/ Carolyn J. Craig
CAROLYN J. CRAIG
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 305-7561
Fax: (202) 305-7644
E-mail: carolyn.craig@usdoj.gov

OF COUNSEL

CHRISTOPHER J. BURTON
Commercial and Appellate Litigation
U.S. Postal Service
475 L'Enfant Plaza, S.W.
Room 6323
Washington, D.C. 202050-1127
Tel: (202) 268-3069
Fax: (202) 268-5287
E-mail: christopher.j.burton@usps.gov

January 8, 2005

Attorneys for Defendant