IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| GEMINI ELECTRONICS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 04-166C |
| v. | ) | (Judge Horn) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S SUPPLEMENTAL POST-TRIAL BRIEF**

Pursuant to this Courts order, dated December 17, 2004, Plaintiff Gemini Electronics, Inc. respectfully submits this supplemental post-trial brief, on whether and how the Postal Service's Purchasing Manual ("PM") affects the contract under review. Further, Plaintiff was required to comment on the reasoning employed by the Court in AT&T Corporation v. United States Postal Service, 57 F.Supp.2d 518, 521 (N.D. III,. 1997), which addressed the Procurement Manual's application to commission based contracts, and any other relevant case law.

## ARGUMENT

### I. The Purchasing Manual Applies To The October 1999 Agreement Between Gemini and the Postal Service

#### A. The Agreement Between the Postal Service and Gemini Was a Contract for the Purchase of Services

On October 21, 1999, the Plaintiff, Gemini Electronics, Inc. entered into a contract with the United States Postal Service. The heading of the contract was "**Public Telecommunications Service Agreement**". The first paragraph of the Public Telecommunications Service Agreement stated:

> **"This Agreement is made as of October 18, 1999 by and between the United States Postal Service ("USPS") and Gemini Electronics, Inc. ("Gemini"), an Illinois corporation with its principal place of business at 401 Southwick, Suite 601, Matteson, Illinois 60443."**

The execution of the October 21, 1999 Agreement was unequivocally a contract between the parties. Gemini was entering into a contract with USPS to provide certain services to USPS.[1] With the exception of Paragraph Six of the October 21, 1999 contract between Gemini and USPS the other terms of the contract are precise, clear and meet the traditional elements of contract law.

Specifically, Paragraph three of the contract talks about a definite time period for the beginning and conclusion of the contract. (See Joint Exhibit 5, hereinafter JE5)[2]

The Agreement between Gemini, Inc. and USPS was a contract for the purchase of Services. Moreover, the Purchasing Manual provided to counsel pursuant to this Court's order of December 17, 2004 aptly places a definition on the types of contracts that would be considered as falling under the auspices and provisions of the Manual. First, the Purchasing Manual in 1.6.2.d states in relevant part:

---

[1]It should be noted that the title of the agreement of October 18, 1999 as signed on October 21, 1999 was "**Public Telecommunication Service Agreement**" as opposed to a Public Telecommunications Licensing Agreement. In light of Defendant's claim in their Brief in response to this Court's Order of December 17, 2004, that the October 21, 1999 document executed between Gemini, Inc. and USPS was a licensing agreement as opposed to a contract, the heading of the document clearly states a Public Telecommunications Service Agreement as opposed to Public Telecommunications Licensing Agreement. If the agreement was meant to be a licensing agreement, the heading of the October 21, 1999 agreement would have reflected that the document was supposed to be a licensing agreement as opposed to a contract.

[2]Likewise Paragraph four of the contract talks about compensation between the parties which clearly shows that USPS would be receiving a tangible benefit in terms of monies collected by Gemini, Inc. and payable to USPS as commissions.

> **"Contract. Any understanding that can be legally enforced, formed by two or more parties who promise to perform or to refrain from performing some act. For purposes of this manual, a contract exists when there is a bilateral agreement, a unilateral order (such as a purchase order) by the Postal Service that becomes effective upon performance by the other party, or a binding order under an agreement that did not in itself bind the parties."**

The contract executed on October 21, 1999 between Gemini and USPS fits squarely into the definition of what constitutes a contract per the Purchasing Manual 1.6.2.d. The Agreement was legally enforceable and was "formed by two parties who promised to perform or to refrain from performing some act". (See JE5).

This contract constituted a purchase of services by the USPS from Gemini Electronics, Inc. A purchase of services under the terms of the Purchasing Manual does constitute a contract by USPS. Specifically, Section 1.6.2.o states in relevant and significant part:

> **"Purchasing. All activities related to the purchase of supplies, services, equipment, design and construction and related services, and mail transportation, including planning, solicitation, source selection, contract award, and contract administration. It does not include activities related to the determination of requirements."**

In the October 21, 1999 Agreement, specifically Paragraph four entitled "**Compensation**" in relevant part states:

> **"Compensation. GEMINI shall pay to USPS a monthly commission of twenty-five percent (25%) of the Telecommunications Revenue received by GEMINI from the public telephones installed by GEMINI on the premises."**

It is indeed ironic that Defendants claim that this was not a contract for related services or that this was not a "contract award", yet Defendant USPS received a

handsome benefit and compensation of 25% commission from the public telephones installed by Gemini. The Gemini contract constituted a purchase of services and equipment by USPS from the Plaintiff.

Indeed, Section 1.6.2.s defines the term Services as "The performance of identifiable tasks". The Plaintiff, Gemini, by the terms of its Agreement of October 21, 1999 clearly performed the following "identifiable tasks":

1. Providing public telecommunication services to the Post Office.
2. Installing and maintaining the equipment.
3. Providing supporting structures, devices, appliances, electrical conditions;
4. And providing any other equipment necessary for the Postal Service's customers benefit.

The above specifically identifiable tasks constitutes services as defined by the Purchasing Manual Section 1.6.2.s.[3]

The government employs intellectual sophistry by claiming that the October 21, 1999 "Public Telecommunications Service Agreement between Gemini Electronics, Inc. and United States Postal Service was a licensing agreement, as opposed to a valid contract under the terms and provisions of the Purchasing Manual."

Without exploring and surfing the world of licensing agreements and what the legal definition of what such agreements are, it is sufficient to state that there is nothing in the record of the proceedings in this Court case that indicate that USPS intended for

---

[3]See 39 U.S.C. 601.102 (a)

the October 21, 1999 Agreement to be an exclusive or sole agreement for licensing as opposed to a valid services contract.

While the government correctly refers to Paragraph two of the Public Telecommunications Service Agreement of October 21, 1999 which states specifically:

> **"Granting Of A License. The rights granted under this agreement by USPS to GEMINI constitute a license for the use of the Premises, including, in, upon, through, and over lands and property comprising of the common elements for the purpose of installing, maintaining, repairing, and replacing all telecommunications pipes, lines, conduits, poles, and any enclosure, supporting structure, device, appliance, and electrical connection necessary to allow GEMINI to provide telecommunications services to end users. Gemini agrees that with this license it shall not interfere with the operations of the Postal Service."**

It is indeed a stretch of the legal imagination to take this section of the Agreement and characterize the entire agreement as a licensing agreement. Moreover, Section 2 in terms of licensing is for the purpose of allowing Gemini to have use of certain premises "over lands and property of Defendant USPS". This section cannot be elevated to the point of characterizing the entire Agreement as a licensing agreement as opposed to a contract.

The Agreement between USPS and Gemini was a contract under the terms and conditions as defined by the Purchasing Manual. The above aforementioned provisions of the Purchasing Manual clearly supports the Plaintiff's argument that the Manual applies to the Agreement between the parties. The October 21, 1999 Agreement was a contract for the purchase of services with USPS.

**II. The Decision in AT&T Corporation v. United States Supports the Plaintiff's Position in this Case**

Judge Gottschall's opinion in AT&T Corporation v. United States Postal Service supports the position of Gemini that Defendant USPS is bound by the terms, conditions and regulations of the Purchasing Manual for the USPS. Obviously, the government in AT&T v USPS claimed that "the contract in question did not constitute a "purchase" within the meaning of the Procurement Manual of the Postal Service." Specifically, the Court stated as follows:

> **"The Postal Services's second argument, that the contract with PCS to manage public pay phones on Postal Service property is not a "purchase" within the meaning of the Procurement Manual, is similarly unpersuasive. The Postal Service's General Counsel's Office has previously applied the Procurement Manual's regulations governing competitive procurements to contracts providing services for 0+ calls from Postal Service pay phones even though the contractor (in that case AT&T) was paid by retention of commissions from the money generated from the calls." App. 57 F.Supp 2d 518**

As in the agreement between Gemini and USPS, the Court in AT&T v USPS (supra) held that the Procurement Manual's Regulations applied. AT&T Corporation was in a similar analogous situation as Gemini finds itself in this case. The contract by AT&T Corporation to manage pay phones on USPS property does constitute a "purchase" within the meaning of the Procurement Manual. In fact, the AT&T Corporation entered into a telecommunications service agreement with Defendant USPS. Moreover, like the situation with Gemini, the Agrement allowed AT&T to manage pay telephones in vaarious locatons within the USPS. While it cannot be determined from the content of the opion of AT&T v USPS, it is fairly obvious that the contract between

AT&T and USPS (supra) covered areas and jurisdictions beyond one specific region of USPS.

Moreover, the government in AT&T v USPS supra did not contest or argue that there was no contract "between the parties". One of the sole issues in the AT&T case was whether the term "purchase" within the context of the contract between AT&T and USPS fell within the boundaries and meaning in the Procurement Manual. Like in the case of Gemini v USPS, AT&T had executed a valid written contract with USPS to manage public pay telephones within the Postal Service for a designated commission and fee.

Also, the position of the intervenor, Public Communication Services ("PCS") in AT&T v USPS supra is apposite to the position of Plaintiff Gemini. As this Court knows, prior to the execution of the October 21, 1999 Public Telecommuncations agreement between Gemini and USPS, Defendant USPS in 1992 entered into an agreement with the Ameritech Corporation to place telephones in its Great Lakes area postal facilities.[4] The Gemini Electronics contract was to essentially to replace the contract between Ameritech and USPS. Similarly, it is apparent that the intervenor, PCS, in the AT&T v USPS supra case was awarded a contract by USPS to perform some of the functions and responsibilities of the previously awarded contract of ATT. In the ATT v USPS supra case the government did not contest that the PCS contract was not a valid

[4]Although at the time of the trial of this matter, the government claims that it was unable to find written documentation of the contract or contracts between Ameritech and USPS, the government did not deny that the contracts existed. Moreover, the government concedes that over a period commencing in 1992 Ameritech executed several agreements with Defendant USPS. Each of these agreements "have been lost" and not found between Ameritech and USPS.

contract apparently under the terms of the Procurement Manual as well as under the Purchasing Manual.

It should be noted that in Judge Gotschall's opinion in the ATT v USPS (supra) case, she refers to "the Postal Services General Counsel's Office has previously applied the Procurement Manual's regulations governing competitive procurements to contracts providing services for 0+ calls from Postal Service pay phones even though the contractor (in that case AT&T) was paid by retention of commissions from the money generated from the calls.[5]

Finally, in response to the government's argument that ATT v USPS (supra) is inapplicable to facts and circumstances in our case, it should be stated that trial record reflects that J.T. Weeker clearly had the authority to delegate responsibility for purchasing and procurement to Rufus Porter. Moreover, this fact was admitted by Maria Infanger at the trial of this matter. There is more than enough evidence in the record of this case to indicate that Porter was acting as an agent of Weeker when he executed the 1999 Agreement. There was no limitation on Porter's authority to execute an agreement that bound USPS beyond the Chicago District. The government finds itself in a very difficult position of claiming on one hand that the Procurement Manual in all of its

---

[5]It is indeed interesting that throughout the current proceedings of Gemini v USPS the government has not made reference to the Postal Service General Counsel's Office as having interpreted or explicated the terms and conditions of the Purchasing Manual. Moreover, the government did not produce any evidence of the Postal Service General Counsel's Office having documents, analysis, advisory opinions or letters referring to or reflecting on the meaning and definition of provisions of its Purchasing or Procurement Manuals. Judge Gottshcall's opinion seems to suggest that the General Counsel's office has such information. If it does, this would be unquestionably relevant to matters in this litigation. However, it was only in response to this Court's Order of December 17, 2004 that USPS finally produced the complete Purchasing Manual of USPS. Perhaps it may take such an Order to have Postal Service General Counsel's office respond to its interpretation in other matters in cases involving interpretation of the Procurement and Purchasing Manuals.

provisions are inapplicable to this contract. At the same time, the government claims that certain provisions of the Procurement Manual should be applied to the Gemini contract. The government claims that the section of the Procurement and Purchasing Manuals concerning the delegation of authority should apply to the Gemini contract. On the other hand the government steadfastly maintains that no section of the Procurement Manual applies to Gemini Electronics. They cannot have it both ways.

## CONCLUSION

The Purchasing Manual clearly applies to this case. The October 21, 1999 agreement between Gemini and USPS was a contract enforceable under purchasing manual provisions. The ATT v USPS (supra) case is dispositive in this case.

Respectfully submitted,

s/Lewis Myers, Jr.

Lewis Myers, Jr.
Counsel for Plaintiff
25 E. Washington Street
Suite 1225
Chicago, IL 60602
(312) 236-8004
(312) 236-8804